LARRY RAY AND VIRGINIA RAY *v.* OSS FLETCHER AND
MILDRED FLETCHER, D/B/A FLETCHER PLUMBING &
HEATING CO. ET AL

5-4375                                    423 S. W. 2d 865

Opinion delivered February 12, 1968

*George Theil* and *McCourtney, Atkins & Hunter,*
for appellants.

*Kirsch, Cathey & Brown* and *Ray S. Goodwin,* for
appellees.

JOHN A. FOGLEMAN, Justice. In this case the pro-
priety of the action of the trial court in directing a ver-
dict is questioned.

Appellants negotiated the purchase of a house in Paragould sometime prior to a conveyance to them on March 24, 1966. Appellees were the plumbing sul con- tractors engaged by the general contractor building the house. A part of their contract was the installation of a water heater therein. During construction, an LP (liquid petroleum) water heater was erroneously placed in the house by appellees' subcontractor but was re- moved and replaced with a natural gas unit before ap- pellants moved into the house. When the change was made, a vent pipe, which was connected with the LP gas heater and which extended from three to six inches above the ceiling, was found to be unsuitable for the natural gas heater. It was removed and placed on the bathroom floor. Oss Fletcher remarked to someone at the time that he would replace this vent pipe later. There was no gas line from the street to the house at this time.

Appellants moved into the house on March 3, 1966, having started cleaning it on the preceding day. Work was still being done on the house when the Rays moved in, and unidentified workmen were in and out from time to time. The water supply was not turned on until March 5th, after appellant Virginia Ray had called the real estate agent handling the sale of the house. They did not have any hot water until about four weeks later. Appellant Virginia Ray did not know by whom, or un- der what circumstances, the hot water heater was started or the gas supply turned on, as she discovered that they had hot water one day when she came home from work. She only knew that her husband had put up the necessary deposit and that they had requested that the gas be turned on. There was no other testimony as to the time or circumstances with reference to the water supply being turned on or the heater started. Appellant Larry Ray did not testify.

On March 5th it was necessary to repair the light in the hall immediately next to the closet housing the

water heater and furnace. There were electrical fixtures and electrical wires in the wall between this closet and the kitchen. This wall was burned by the fire.

On May 2nd, Mrs. Ray noticed the smell of smoke and went to the back part of the house where she saw smoke in the bathroom. She opened the closet wherein the water heater and furnace were installed. Seeing smoke and flames around the vent pipe of the water heater in the ceiling, she called the fire department. Mrs. Ray had been using her electric washing machine, which was adjacent to the closet wall, about 30 minutes before she noticed the fire. As a result of the fire, the ceilings in the bathroom and kitchen were damaged and the walls "smoked." Mrs. Ray didn't look in the attic to see where the fire was burning, nor did she look there after the fire. After this occurrence, a photograph was made of the wall and ceiling of the closet. This photograph shows two holes in the ceiling, through one of which a metal pipe appears to extend from an object identified as a water heater into the attic. Through this hole appears what seems to be a charred ceiling joist. The other hole is smaller and appears to be nearby and to the viewer's right of the vent pipe. There is also a hole in the wall behind the vent pipe, near the junction of the wall and ceiling.

The Paragould Fire Chief said that the fire was in the bathroom when the fire department arrived. Upon opening the closet, he looked up and saw that there was no vent of the hot water heater reaching from the ceiling to the roof. The firemen tore some of the sheetrock off the ceiling around the place that appeared to be burned around the vent pipe and tore out some of the insulation in the ceiling. According to the Chief, the hole to the right of the vent was made by the firemen attempting to determine the extent of the fire. He did not know whether the one in the wall was burned there or put there by the firemen. He thought that the furnace was in the attic.

Ted Gardner, a fireman, testified that the vent pipe did not extend more than two or three inches above the ceiling.

Wilson B. Cox, who supervised the repairs after the fire, testified that the attic was burned throughout.

Viewing the evidence in the light most favorable to appellants and considering all inferences favorable to them which might be drawn from the testimony, we find no error in the direction of the verdict. We do not find any evidence making a question of fact for the jury, either as to negligence or proximate cause.

There is no evidence whatever that appellees were responsible for the condition of the hot water tank or its vent. Neither of them nor any of their agents, sub-contractors, or employees are shown to have been about the premises at any time after the vent for the LP tank was left on the bathroom floor when there was neither a water supply nor gas supply for the substituted water heater. The appellants moved into the uncompleted house and caused these supplies to be turned on. There is not even any evidence that the vent pipe was connected to the water heater when they moved in or any suggestion of the identity of the person who connected the vent pipe. (Mrs. Ray testified that she did not even notice a vent pipe when they moved in, either on the floor or on the water heater.) Under these circumstances, we do not feel that any reasonable view of the evidence could justify a finding that there was any negligent act or omission on the part of appellees. From all we can gather from this record, it is just as likely that appellants caused the vent pipe to be placed on the water heater as it is that appellees did.

Even if we found evidence of negligence to make a jury question, we could not say that there was sufficient evidence, even circumstantial, to show the cause of the fire so as to remove a jury determination from the realm of speculation and conjecture. No one testified as to the function of the vent pipe or that any flames or

sparks would ever pass from the burning gas through that pipe. The furnace was located in the vicinity of the water heater and no one testified as to its type, its fuel, or its condition before or after the fire. Electrical wires passed through the wall of the closet, and there had previously been a failure of a light in the adjacent hall which called for repairs of some sort. Just 30 minutes before the fire, appellee Virginia Ray had used her electric washing machine which was against the wall between the kitchen and the closet. While there were flames around the vent pipe at the ceiling when Mrs. Ray discovered the fire, there was also a hole in the wall, which may, for all the evidence shows, have been the point of origin of the fire. It was necessary that appellants offer evidence by which the jury could say, without speculation or conjecture, that the fire was caused by the deficiency in the vent pipe. *Reeves* v. *Arkansas Louisiana Gas Co.*, 239 Ark. 646, 391 S. W. 2d 13. Here, the jury would have to speculate as to the origin and cause of the fire.

A second point asserted for reversal is the alleged error of the trial judge in refusing to permit one offered as an expert witness to testify as to the cause of the fire in Paragould.

There are at least two reasons that we cannot hold the court's exclusion of the testimony of the fire chief as to the cause of the fire to be erroneous. The witness was asked to state an opinion as to the cause of the fire without showing any qualifications or experience to make his opinion admissible, other than the fact that he had been a fireman for 18 years and chief for three of those years. Later it was shown that he was a full-time employee of a furniture store and only a part-time fireman. The determination of the qualifications of an expert witness to express an opinion is within the discretion of the trial judge, and we will not reverse his decision unless it appears that he abused that discretion. *Smith* v. *State,* 243 Ark. 12, 418 S. W. 2d 627. We find no abuse of discretion here. Further-

more, we cannot consider this point because there was no offer of proof or other showing of what the testimony of the witness would have been. *Barnes* v. *Young,* 238 Ark. 484, 382 S. W. 2d 580. Thus, it is unnecessary that we determine whether or not an expert found to have been properly qualified should have been permitted to express an opinion as to the cause of the fire under the facts and circumstances of this case.

The judgment is affirmed.