Earl CALDWELL v. STATE of Arkansas

CA CR 79-85                    594 S.W. 2d 24

Opinion delivered January 16, 1980
Released for publication February 13, 1980

*Robert L. Lowery* and *Patton, Brown, Leslie & Davidson*, by: *Robert B. Leslie*, for appellant.

*Steve Clark*, Atty. Gen., by: *Dennis R. Molock*, Asst. Atty. Gen., for appellee.

MARIAN F. PENIX, Judge. This case was appealed to the Arkansas Supreme Court and by that court assigned to the Arkansas Court of Appeals pursuant to Rule 29(3).

Earl Caldwell was charged by felony information with the rape of Linda Skidmore on May 11, 1978. The victim reported to police she had been raped by a man who forced his way into her home at about 1:30 a.m. She stated a man

had broken through her back door, tied her hands and forced her into the living room. The man held a flashlight in her face most of the time he was in the house. The man forced her to lie down on a couch and proceeded to rape her. The victim called the police at 2 a.m. Officer Herbert of the Little Rock Police Department went to Ms. Skidmore's home. He observed that the kitchen door had been kicked open. Ms. Skidmore described her assailant as a white male, approximately 40 years old, and very large. She estimated him to be 6'4", 250 pounds, with reddish brown hair. She stated the man had worn a black cap, red sweater, and black work gloves.

David Garner, a Little Rock police officer, arrived at Ms. Skidmore's home about 7:30 a.m. where he held a mug shot identification session. The photographs consisted of line-up photos, and polaroid and regular police photos. Ms. Skidmore positively identified an 8 x 10 line-up photo of Earl Caldwell as a picture of the man who had raped her. Caldwell's picture was the third photo which Ms. Skidmore viewed.

Later the same day, Ms. Skidmore witnessed a physical line-up at the police station. There were six white males in the line-up, four of whom were FBI agents. Earl Caldwell was also in the line-up. All six men were dressed in blue coveralls. Ms. Skidmore identified Earl Caldwell as the man who had raped her.

Earl Caldwell was arrested for the rape of Ms. Skidmore. Police records reveal he is a 26 year old white male with bushy reddish brown hair. He is 5'10" and weighs 200 pounds.

Caldwell was tried before a jury and found guilty of rape. The jury fixed his sentence at 18 years in the state penitentiary. From this conviction, Caldwell has appealed. The appellant bases his argument for reversal on four separate points.

## I

Defendant contends there was error in permitting the State to inquire about the previous conviction of the defend-

ant and permitting the state to go beyond evidence of the conviction per se. The defendant argues the prosecutor's questioning and use of the prior conviction was so prejudicial that its probative value was outweighed.

Prior to the trial, defendant filed a Motion in Limine requesting the state be precluded from mentioning his previous charge of rape and his conviction for the crime of sexual abuse.

At the trial the defendant took the stand. His attorney asked him whether he had been convicted of sexual abuse. The scope of cross-examination includes matters developed on direct examination. When the defendant produced five character witnesses the trial court ruled it proper for the prosecutor to cross-examine the witnesses by asking whether their opinions as to the defendant's reputation would be altered by knowing of the defendant's prior conviction. This was proper pursuant to Ark. Stat. Ann. § 28-1001, Rule 405(a) (Repl. 1979). The prosecutor inquired of one of the character witnesses whether the fact the defendant and defendant's wife had testified inconsistently in regard to defendant's whereabouts on a particular date would have any effect upon the witnesses' opinion of the defendant's truthfulness. The prosecutor phrased the question in terms of a hypothetical. Rule 607 of the Arkansas Uniform Rules of Evidence provides a witness' credibility may be attacked by any party. The scope of the examination is largely within the discretion of the trial court. *Dillard* v. *State*, 260 Ark. 743, 543 S.W. 2d 925 (1976). Opinions of character witnesses were the means by which defendant chose to prove his reputation for truthfulness. It is logical to allow the cross-examiner to explore the basis of the witnesses' opinion, i.e., whether the witness had heard all the facts about the defendant on which to base his opinion. *Lowe* v. *State*, 264 Ark. 205, 570 S.W. 2d 253 (1978). We find no abuse in the court's allowing the prosecutor to cross-examine the character witnesses as to the basis of their opinion.

## II

Defendant contends the court erred in commenting upon the weight of the evidence in the presence of the jury.

The court, in the presence of the jury, stated the defense counsel had asked the prosecuting witness a certain question "about six times at least. Go ahead. One more time."

The court continued: Come on Mr. Leslie, ask the questions. Let's move this case along.

Mr. Leslie: Your Honor, well these are important issues.

The Court: I realize how important they are and it's important to move this case along, Mr. Leslie. We're having way too much repeating of questions in this case. This jury is not stupid. Now they can hear these answers. Let's move along."

Again while arguing the relevance of a witness' testimony the defense counsel stated the issue was very important.

The Court: Well, it may be to you. It doesn't seem to be to me, but go ahead. I'll let you explore it for whatever it's worth.

The defense counsel made no objection to either judicial comment. Further, there was no error present.

The first alleged improper comment was made because defense counsel was hounding and badgering the witness with repetitious picayune cross examination as the specific height, to the quarter of an inch, of herself and her assailant. The judge asked the defense counsel to move on. The judge was attempting to move the trial forward. Certainly curtailment of repetitious questions is not an abuse of the trial court's discretion where the witness' answers are only a reiteration of earlier testimony. *Nelson* v. *State*, 257 Ark. 1, 513 S.W. 2d 496 (1974).

The second alleged improper comment was made to end a lengthy debate by counsel over relevance of testimony of a defense witness. It is the trial court's duty to determine relevancy. *Tucker* v. *State*, 264 Ark. 890, 575 S.W. 2d 684 (1979).

The court instructed the jury:

I have not intended by anything I have said or done, or by any questions that I may have asked, to intimate or suggest what you should find to be the facts, or that I believe or disbelieve any witness who testified. If anything that I have done or said has seemed to so indicate, you will disregard it.

We find the court's remarks not improper.

## III

The defendant alleges error in permitting in-court identification of him by the victim.

On the same day as the rape, a live line-up was held and a mug shot line-up was conducted. In both instances, the prosecuting witness positively identified the defendant without hesitation or reservation. There are several factors to consider in determining the reliability and admissibility of the identification testimony. The Arkansas Supreme Court has set these factors out: time between the commission of the crime and the identification; attentiveness and opportunity of the victim to view the assailant at the time of the crime; level of certainty at the confrontation; and accuracy of the description of the accused. See *Lindsey* v. *Jackson*, 264 Ark. 430, 572 S.W. 2d 145 (1978).

The defendant alleges there is too great a discrepancy between the victim's description of her assailant's height, weight and age and the actual size of the assailant. The factors in dispute are very deceptive. Officer Herbert testified as to the description given him by the victim: ". . . he looked very large when he came through the door. She guessed 6'4"." The victim stated she concentrated on the defendant's face.

We find the defendant has failed to meet his burden of demonstrating that when the totality of the circumstances are considered there was a "very substantial likelihood of

irreparable misidentification." *Pollard* v. *State*, 258 Ark. 512, 514, 522 S.W. 2d 627 (1975).

At no time was the victim unsure of her identification. She testified she did not learn of defendant's prior rape charges until the day following her positive identification of him.

We find the in-court identifications were based upon observations of the prosecuting witness sufficiently independent of any line-up procedure and the trial court properly admitted this testimony into evidence. The defendant did not object at the trial to the in-court identification.

## IV

Defendant alleges error in the court's prohibiting the expert testimony of a psychologist concerning eye witness identification.

The testimony of a qualified expert in the field of human perception was offered for the purpose of aiding the jury in understanding how human perception works mechanically and what factors influence the perception, and the ability of an individual to later recall that perception. Secondly, the testimony was offered for the purpose of an opinion as to the reliability of the victim's perception and recall under the circumstances, and what effect outside influence may have had on her recall. The Court refused to allow such proffered testimony. The qualifications of the expert witness are not in issue. Rather the issue is the scope of the testimony of the expert. The actual testimony would be invading the purview of the duties of the jury. The credibility of witnesses and the weight accorded to their testimony is solely within the province of the jury. *Smith* v. *State*, 258 Ark. 601, 528 S.W. 2d 389 (1975).

The defendant demanded a trial by a jury of his peers. He received such a jury. Defendant contends he should be permitted to assist the trier of fact with the offered psychologist testimony.

Parties to a trial have the right to take the opinion of experts upon questions involved in cases which can only be answered by those who have expert knowledge of the subject; . . .

However, in *Hinton* v. *Stanton*, 121 Ark. 626, 183 S.W. 2d 765 (1916), our Supreme Court held "Where the subject matter could be understood by a jury of average intelligence, the court below did not err in excluding expert testimony."

The science of human perception testimony is new. In the federal case of *U.S.* v. *Fosher*, 590 F. 2d 381 (1st Cir. 1979), the trial court refused proffered expert testimony relating to perception and memory of the eyewitnesses. The Appellate Court upheld the trial court and stated the testimony would not assist the jury in determining the fact in issue and that the jury was fully capable of assessing the eyewitnesses' ability to perceive and remember, given the help of cross-examination and cautionary instructions, without the aid of an expert; that the expert testimony would raise a substantial danger of unfair prejudice, given the aura of reliability that surrounds scientific evidence; and that the limited probative value of the proof offered was outweighed by its potential for prejudice.

No proffer was made in the present case as to the basis of the knowledge gained by the expert. The field of perception and memory is alleged to be a science. Here in Arkansas, our Supreme Court has consistently held certain scientific analysis testimony inadmissible based upon its unreliable nature, to-wit: polygraph tests, voice stress analyzers. *Gardner* v. *State*, 263 Ark. 739, 756, 569 S.W. 2d 74 (1978).

The defendant was in no way harmed by the denial of the expert's testimony. The defendant was given ample opportunity to cross-examine the victim in order to emphasize the same areas for possible mistakes as the expert would have testified to, without the possible undue influence and prejudice.

The general test regarding the admissibility of expert testimony is whether the jury can receive "appreciable

help" from such testimony. 7 Wigmore, Evidence, § 1923 (3d ed., 1940); *Jenkins* v. *U.S.*, 113 U.S. App. D.C. 300, 307 F. 2d 637 (1962). The balancing of the probative value of the tendered expert testimony evidence against its prejudicial effect is committed to the "broad discretion" of the trial judge and his action will not be disturbed unless manifestly erroneous. *Ray* v. *Fletcher*, 244 Ark. 74, 423 S.W. 2d 865 (1968); *Ark-La Gas Co.* v. *Maxey*, 245 Ark. 15, 430 S.W. 2d 566 (1968).

We find the expert testimony was properly excluded as an invasion into the province of the trier of fact.

From the record we find no reversible error.

Affirmed.

WRIGHT, C.J., and NEWBERN, J., concur.

DAVID NEWBERN, Judge, concurring. Although I concur in the result reached, I cannot agree with that part of the majority opinion which characterizes the defense counsel's cross examination of the prosecuting witness as "hounding and badgering" and "picayune."

Chief Judge WRIGHT joins in this concurring opinion.