Riley Dobi NOEL *v.* STATE of Arkansas

CR 99-738                                    26 S.W.3d 123

Supreme Court of Arkansas
Opinion delivered September 14, 2000

*McLean Law Firm*, by: *William A. McLean*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Joseph V. Svoboda*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Riley Dobi Noel was convicted of three counts of capital murder and one count of attempted capital murder; he was sentenced to death by lethal injection and sixty years' imprisonment, respectively. This court affirmed his convictions and sentences in *Noel v. State*, 331 Ark. 79, 960 S.W.2d 439 (1998). Noel then filed a petition for postconviction relief pursuant to Ark. R. Crim. P. 37. The trial court denied the petition. On appeal, Noel alleges four instances in which his trial counsel was ineffective: (1) failing to present alibi testimony; (2) eliciting from Noel on direct examination that he was testifying against the advice of counsel; (3) failing to call witnesses to testify about Noel's demeanor and activities in the days prior to the murders; and (4) failing to request funds for an expert on eyewitness identification. Our jurisdiction of this appeal is pursuant to Rule 37 and Ark. Sup. Ct. R. 1-2(a)(8). We find no error and affirm.

The trial record shows that on the evening of June 4, 1995, Noel and three other persons went to the home of Mary Hussian in Little Rock. Present in the home that night were Mrs. Hussian, three of her children, and Kyle Jones. The three children (Malak Hussian, age 10; Mustafa Hussian, age 12; and Marcel Young, age 17) were shot by Noel in the head as they lay on the living room floor. Meanwhile, a codefendant, Terry Carroll, attempted to shoot Mrs. Hussian with a shotgun. The shotgun jammed, however, and Mrs. Hussian was eventually able to wrestle it away from Carroll. Jones escaped unharmed through the bathroom window. It was the State's theory that Noel committed the murders in retaliation for

the death of his brother, which had occurred approximately one week earlier. Noel apparently believed that his brother had been "set up" in a drive-by shooting by one of Mrs. Hussian's daughters.

■ In his petition for postconviction relief, Noel alleged nine instances in which his trial counsel was ineffective. To prevail on a claim of ineffective assistance of counsel, the petitioner must show first that counsel's performance was deficient. *Jones v. State*, 340 Ark. 1, 8 S.W.3d 482 (2000); *Weaver v. State*, 339 Ark. 97, 3 S.W.3d 323 (1999). This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 99, 3 S.W.3d at 325. Petitioner must also show that the deficient performance prejudiced his defense; this requires a showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Id.* Unless the petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Chenowith v. State*, 341 Ark. 722, 19 S.W.3d 612 (2000) (*per curiam*); *Thomas v. State*, 330 Ark. 442, 954 S.W.2d 255 (1997).

■■ The reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* To rebut this presumption, the petitioner must show that there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt respecting guilt, *i.e.*, that the decision reached would have been different absent the errors. *Id.* A reasonable probability is one that is sufficient to undermine confidence in the outcome of the trial. *Id.* In making a determination on a claim of ineffectiveness, the totality of the evidence before the factfinder must be considered. *Chenowith*, 341 Ark. 722, 19 S.W.3d 612. This court will not reverse the denial of postconviction relief unless the trial court's findings are clearly erroneous or clearly against the preponderance of the evidence. *Jones*, 340 Ark. 1, 8 S.W.3d 482; *State v. Dillard*, 338 Ark. 571, 998 S.W.2d 750 (1999). With this standard in mind, we review the four allegations raised on appeal.

## I. Alleged Alibi Witnesses

Noel argues that trial counsel was ineffective for failing to present the testimony of alibi witnesses. The trial record reflects

that an *in-camera* hearing was held, wherein defense counsel reported that Noel had given him the names of several witnesses who would provide an alibi for him. During the course of interviewing those witnesses, it was discovered that they could not provide a genuine alibi for Noel; however, the witnesses indicated that they were prepared to lie for him. Based on this knowledge, counsel advised that he would not present the false testimony, as it would violate the Model Rules of Professional Conduct.

■ During the postconviction hearing, Noel failed to call these alleged alibi witnesses to the stand. Moreover, he made no attempt to proffer the substance of the testimony that they would have provided at trial. This alone is sufficient reason to affirm. This court does not grant postconviction relief for ineffective assistance of counsel where the petitioner has failed to show what the omitted testimony was and how it could have changed the outcome. *Pyle v. State*, 340 Ark. 53, 8 S.W.3d 491 (2000); *Johnson v. State*, 321 Ark. 117, 900 S.W.2d 940 (1995).

■ Furthermore, the Supreme Court has recognized that as a matter of law, counsel is not ineffective for failing to present false testimony. In *Nix v. Whiteside*, 475 U.S. 157 (1986), the defendant in a murder trial had consistently told his attorney that he had acted in self-defense in stabbing the victim. He told his attorney that although he had not actually seen a gun in the victim's hand, he was convinced that the victim had a gun. Shortly before the trial, however, the defendant told his attorney that he had seen something metallic in the victim's hand. When questioned about this new information, the defendant stated: "If I don't say I saw a gun, I'm dead." *Id.* at 161. Defense counsel warned that if he testified falsely, it would be counsel's duty to advise the court that he felt the defendant was committing perjury, and that counsel would seek to withdraw from his case. At his trial, the defendant testified without making reference to seeing anything in the victim's hand, and he was convicted. Following his conviction, he claimed that he had received ineffective assistance of counsel.

The Court disagreed, holding that counsel's conduct did not violate the reasonable professional standards contemplated in *Strickland v. Washington*, 466 U.S. 668 (1984). In reaching its decision, the Court discussed the need to balance the Sixth Amendment right to effective counsel with the ethical obligations attorneys have

as officers of the court. The Court explained that counsel's duty of loyalty and his duty to zealously advocate the defendant's cause are "limited to legitimate, lawful conduct compatible with the very nature of a trial as a search for truth." *Nix*, 475 U.S. at 166. Thus, "[a]lthough counsel must take all reasonable lawful means to attain the objectives of the client, counsel is precluded from taking steps or in any way assisting the client in presenting false evidence or otherwise violating the law." *Id.* The Court thus concluded that because there was no breach of any recognized professional duty, there was no deprivation of the right to effective assistance of counsel under *Strickland.* Finally, the Court held that "*as a matter of law*, counsel's conduct complained of here cannot establish the prejudice required for relief under the second strand of the *Strickland* inquiry." *Id.* at 175 (emphasis added).

██ The only difference between this case and *Nix* is that, here, the false testimony was not being supplied by the defendant, but by his sympathizers. Counsel in this case acted properly by declining to present the false alibi testimony; to do otherwise would have been a violation of his ethical obligations. Rule 3.3(a) of the Model Rules of Professional Conduct provides: "A lawyer shall not knowingly: ... (4) offer evidence that the lawyer knows to be false." Subsection (c) provides: "A lawyer may refuse to offer evidence that the lawyer reasonably believes is false." Given these rules and the Supreme Court's recognition that a lawyer's duty of zealous representation extends only to legitimate, lawful conduct, we conclude that counsel was not ineffective for failing to present the false alibi testimony.

## II. Informing Jury that Noel was Testifying Against Counsel's Advice

Noel contends that he was prejudiced when the jury was informed, during his direct examination, that he was testifying against the advice of counsel. The record reflects the following exchange between Noel and his trial counsel:

Q  All right. Now, Riley, you're taking the stand here because you want to tell the jury your story. Is that correct?
A  Yes sir.
Q  And that's over my advice?
A  Yes, sir.
Q  Against my advice?

A Yes, sir.

Noel urges that this was a comment on his credibility, or lack thereof, as a witness. He contends that by informing the jury that he was testifying against the advice of counsel, the jury could have concluded that even his own attorney did not believe he was telling the truth.

The State argues that this was a calculated trial tactic aimed at showing the jury that Noel was so insistent upon his innocence that he would risk taking the stand, where his prior felony convictions would be revealed and he would likely undergo an exhausting cross-examination. Trial counsel testified that he chose to reveal this information to show the jury how strongly Noel believed in his innocence. This strategy was further pursued by counsel in closing argument, wherein he stated:

> I told you in my opening that there were three witnesses that I anticipated would be presented, three main witnesses, for the State, and there were three main witnesses, testimony of witnesses against my client, Kyle Jones, Mary Hussian, Curtis Cochran.... Now, we have two people that I told you would be very partisan witnesses, and they are. And I don't fault them at all. They have lost loved ones, and we feel sorry for them. It's a very tragic event. The third person is Curtis Cochran, and, you know, an admitted liar. Ladies and gentlemen, you have the Defendant, who took the stand in his own behalf, against the advice of his own attorney, and told you in his own way that he was not involved on June 4th, 1995. He told you his own story. He told you without any kind of deal from the State, no lighter sentence. He got it [sic] up, faced the music, and underwent a very grueling cross examination by the most experienced prosecutor on the prosecuting attorney's staff.... That, ladies and gentlemen, I think, rebuts a lot of the State's evidence[.]

The trial court found that counsel was attempting to impress the jury with Noel's sincerity in wanting to tell his side of the story, and that this was a matter of trial strategy. We cannot say that this ruling was clearly erroneous. Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for a finding of ineffective assistance of counsel. *Chenowith*, 341 Ark. 722, 19 S.W.3d 612; *Weaver*, 339 Ark. 97, 3 S.W.3d 323. Thus, even though another attorney may have chosen a different course, trial strategy,

even if it proves unsuccessful, is a matter of professional judgment. *Fretwell v. State*, 292 Ark. 96, 728 S.W.2d 180 (1987).

### III. Failing to Call Certain Witnesses

■ Noel argues that trial counsel was ineffective for failing to call several witnesses who would have testified as to his demeanor and activities during the days prior to the murders. The substance of their testimony was that Noel did not act like a person who was planning to murder these children in retaliation for his brother's death. While he acknowledges that the decision whether to call particular witnesses is a matter of trial strategy outside the purview of Rule 37, Noel argues that counsel's failure on this point coupled with the comment about his decision to testify against counsel's advice, cumulates into extreme prejudice and requires reversal under *Strickland*, 466 U.S. 668. Inasmuch as Noel is making a cumulative-error argument, we do not address it because this court does not recognize cumulative error in allegations of ineffective assistance of counsel. *See Huddleston v. State*, 339 Ark. 266, 5 S.W.3d 46 (1999); *Parks v. State*, 301 Ark. 513, 785 S.W.2d 213 (1990).

In any event, Noel has failed to show that counsel's failure to call these witnesses was error. During the hearing on the petition, trial counsel stated that he did not recall having knowledge of any witnesses who could have testified that days before the murders, Noel was not acting like someone planning to kill. Counsel stated that he, co-counsel, and their investigator had interviewed every potential witness that Noel provided them, and there were no additional witnesses that could have been called on Noel's behalf. The trial court found that the admission of such demeanor testimony would not have altered the outcome of the trial and that, as a matter of law, the allegation was insufficient to warrant relief. We agree.

■ ■ Whether or not counsel had known about such testimony, the failure to present it does not render counsel's performance ineffective. The decision whether to call particular witnesses is a matter of trial strategy that is outside the purview of Rule 37. *Chenowith*, 341 Ark. 722, 19 S.W.3d 612; *Dillard*, 338 Ark. 571, 998 S.W.2d 750. Trial counsel must use his or her best judgment to determine which witnesses will be beneficial to the client. *Id.*

When assessing counsel's decision not to call a particular witness, we must take into account that the decision is largely a matter of professional judgment that experienced advocates could endlessly debate, and the fact that there was a witness or witnesses who could have offered beneficial testimony is not, in itself, proof of counsel's ineffectiveness. *Id.* Noel has not shown that counsel was deficient for not calling these particular witnesses or that his defense was prejudiced by the absence of their testimony. Accordingly, we affirm on this issue.

### IV. Funds for Expert Witness

Lastly, Noel argues that trial counsel was ineffective for failing to request funds to hire an expert witness to challenge the credibility of the eyewitness testimony of Mrs. Hussian and Kyle Jones. He contends that counsel's failure to do this prevented him from raising the issue on direct appeal. Noel acknowledges that this court's case law is not in his favor; however, he raises this issue to preserve it for federal review.

During the hearing below, trial counsel testified that he did not seek to retain an expert on eyewitness identification because he knew that Arkansas case law did not support the admissibility of such testimony. The trial court agreed, finding that the question of allowing an expert witness to testify regarding possible unreliability of eyewitness testimony had been addressed by this court and determined to be an invasion of the province of the jury. The trial court thus concluded that counsel was not ineffective for failing to request funds for such an expert. We agree with the trial court's analysis.

In *Utley v. State*, 308 Ark. 622, 626, 826 S.W.2d 268, 271 (1992), this court held that the admission of expert testimony regarding eyewitness identification "could have hindered the jury's ability to judge impartially the credibility of the witnesses and the weight to be accorded their testimony." In arriving at this conclusion, this court observed that our appellate courts had long upheld the trial court's refusal to allow such expert testimony. For example, in *Criglow v. State*, 183 Ark. 407, 36 S.W.2d 400 (1931), this court explained:

> [T]he question whether these witnesses were mistaken in their identification, whether from fright or other cause, was one which

the jury, and not an expert witness, should answer. This was a question upon which one man as well as another might form an opinion, and the function of passing upon the credibility and weight of testimony *could not* be taken from the jury.

*Id.* at 409-10, 36 S.W.2d at 401-02 (citations omitted) (emphasis added). *See also Parker v. State*, 333 Ark. 137, 968 S.W.2d 592 (1998); *Jones v. State*, 314 Ark. 289, 862 S.W.2d 242 (1993); *Perry v. State*, 277 Ark. 357, 642 S.W.2d 865 (1982); *Caldwell v. State*, 267 Ark. 1053, 594 S.W.2d 24 (Ark. App. 1980).

Given the prior appellate holdings on this issue, it is not likely that counsel would have been successful in admitting such expert testimony to the jury. Thus, we cannot say that counsel's decision not to request funds for this purpose amounted to a denial of effective assistance of counsel. Counsel cannot be found ineffective for failing to make an argument that has no merit or has been previously rejected by this court. *See Monts v. State*, 312 Ark. 547, 851 S.W.2d 432 (1993); *O'Rourke v. State*, 298 Ark. 144, 765 S.W.2d 916 (1989) (*per curiam*). Accordingly, Noel has failed to demonstrate both error and prejudice on this issue.

Affirmed.