Carl Franklin COOK *v.* STATE of Arkansas

CR 03-670 204 S.W.3d 532

Supreme Court of Arkansas
Opinion delivered March 3, 2005

*Sam T. Heuer*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

PER CURIAM. Appellant and Sandra Burris, his live-in girlfriend, were tried together and represented by Dale Finley. Appellant was convicted of delivery of methamphetamine, conspiracy to deliver methamphetamine, and theft of property. He was sentenced to 420 months' imprisonment. Burris was convicted of conspiracy to deliver methamphetamine and sentenced to six years' probation conditioned upon her serving 120 days in the Pope County Detention Center. The Arkansas Court of Appeals affirmed. *Cook v. State*, 76 Ark. App. 447, 68 S.W.3d 308 (2002). Appellant subsequently sought postconviction relief pursuant to Ark. R. Crim. P. 37, which was denied following a hearing. From that order comes this appeal.

On appeal, appellant makes the following claims: (1) he was denied the effective assistance of counsel due to counsel's joint representation of appellant and Burris and for counsel's breach of loyalty to appellant, (2) counsel was ineffective for failing to investigate the granting of a pardon, (3) counsel was ineffective for failing to impeach Tom Alexander using tape recorded conversations, (4) the trial court erred in failing to find that appellant was denied due process because the State failed to disclose evidence of a pardoned conviction, and (5) counsel was ineffective for failing to interview and present the testimony of four witnesses. All other claims raised below but not argued on appeal are abandoned. *See Echols v. State*, 344 Ark. 513, 519, 42 S.W.3d 467, 471 (2001).

Appellant claims that counsel was ineffective as a result of a conflict of interest stemming from counsel's joint representation of appellant and Burris, which also breached counsel's duty of loyalty to appellant. Specifically, appellant claims that this alleged conflict adversely affected counsel's performance during voir dire, the cross-examination of Tom Alexander, the direct examination of Burris, closing arguments, in his failure to move for directed verdict on behalf of appellant, and during the penalty phase of trial. In denying relief on this claim, the trial court held that appellant failed to show how counsel's performance was detrimental to the defense or that he was prejudiced.

Prior to trial, counsel filed a motion for severance on behalf of Burris. This motion was the only means by which the dual representation issue was raised. On direct appeal, appellant referenced the closing statement of the motion to claim that it was filed on behalf of both defendants. He claimed that because counsel also represented Burris, his defense was prejudiced by creating a conflict of interest, and he was therefore denied his constitutional

right to effective assistance of counsel. The court of appeals ruled that this claim of ineffectiveness was not raised below. *Cook*, 76 Ark. App. at 453, 68 S.W.3d at 313. According to the court, because appellant raised an ineffectiveness claim instead of an "immediate and egregious trial error," the court did not believe that the application of the "serious error" exception to the contemporaneous objection rule was proper. Therefore, the court held that the claim was not preserved, and affirmed. *Id.* at 454, 68 S.W.3d at 313.

■ Cases involving an alleged conflict of interest due to joint representation are reviewed according to the standard set forth in *Cuyler v. Sullivan*, 446 U.S. 335 (1980). In *Cuyler*, the United States Supreme Court held that in order for a defendant, who did not raise an objection at trial, to establish a violation of the Sixth Amendment right to counsel, he must demonstrate that an actual conflict of interest adversely affected counsel's performance. *Id.* at 348. Moreover, "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." *Id.* at 349-50. Until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for a claim of ineffective assistance. *Id.* at 350. Finally, the Court has held that "the possibility of conflict is insufficient to impugn a criminal conviction." *Id.*

Specifically, appellant claims that counsel focused on Burris's status as an accomplice during voir dire, thereby "elevating [appellant's] role in the charges." Appellant and Burris were charged as both principals and accomplices. During voir dire, counsel asked the potential jurors about their ability to distinguish between the two. According to appellant, counsel "related" to the venire that Burris was charged as an accomplice, which "created an inference that [appellant] was much more involved with the allegations than Ms. Burris."

■ Simply clarifying what it means to be an accomplice and stating that Burris was not an accomplice, did not implicate appellant, considering that in the two counts in which both appellant and Burris were charged, the information stated that they acted as both principals and accomplices. Considering that three of the five counts in the information pertained solely to appellant, it appeared that appellant did play a bigger role in the offenses. Nothing counsel stated in voir dire changed those facts. Accord-

ingly, appellant has failed to demonstrate that an actual conflict of interest adversely affected counsel's performance during voir dire.

■ Appellant goes on to claim that a conflict of interest affected counsel's cross examination of Alexander, as counsel's focus during the examination was to "minimize" Burris's role. Alexander was a confidential informant who worked with law enforcement to arrange the purchase of methamphetamine from appellant. Counsel examined Alexander at length in an effort to diminish his credibility. The tarnishing of Alexander's credibility in the eyes of the jury benefitted both appellant and Burris. Therefore, appellant has failed to demonstrate that an actual conflict of interest adversely affected counsel's cross-examination of Alexander.

■ Appellant also claims that a conflict of interest affected counsel's direct examination of Burris. At issue appears to be Burris's testimony regarding appellant's drug use. Appellant was also called to testify, giving him an opportunity to rebut such testimony. By calling both appellant and Burris to give their stories, counsel displayed no favoritism.

■ Appellant claims that counsel was ineffective in his closing argument. In his petition, appellant makes this assertion, and does nothing more than provide a list of page references to the transcript in support of his claim. In his brief, appellant simply argues that during closing argument, counsel concentrated on Burris and not appellant. However, appellant's claim is nothing more than a conclusory allegation with no supporting evidence, which does not provide a basis for postconviction relief. *See Nance v. State*, 339 Ark. 192, 195, 4 S.W.3d 501, 503 (1999).

■ Appellant also claims that a conflict was apparent in counsel's motion for directed verdict on behalf of Burris and not appellant. However, again, he makes no showing of an actual conflict as required by *Cuyler* for a finding of ineffectiveness. At the Rule 37 hearing, counsel testified that, in his view, there was "plenty of proof" of appellant's guilt; therefore, he opted not to move for directed verdict on behalf of appellant. We find no basis for relief due to a conflict of interest, as counsel was using his professional judgment in choosing not to make a frivolous motion. Appellant also claims that counsel's failure to move for directed verdict on his behalf deprived him of a potential dismissal and the ability to raise certain issues on appeal, including a challenge to the

sufficiency of the evidence. This claim appears to be unrelated to any alleged conflict, and is analyzed below using the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

■ Finally, appellant claims that counsel's conflict of interest also affected his performance during the penalty phase of trial. Appellant argues no specific instances of how the conflict actually prejudiced his defense. He alleges only that this was, yet again, an attempt by counsel to "exonerate" Burris at appellant's expense. According to appellant, the disparity in the sentences is proof that appellant suffered prejudice. However, an allegation with no supporting evidence does not provide a basis for postconviction relief. *Nance, supra.*

■ Appellant has failed to establish that counsel actively represented conflicting interests, which is the "constitutional predicate" for a claim of ineffective assistance under *Cuyler*. Without such a showing, there is no presumption of prejudice. *Id.* Accordingly, we find no merit to appellant's claim, and affirm the trial court's denial of relief.

■ As stated, appellant's additional claims of ineffectiveness are analyzed using the *Strickland* standard, which is as follows:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687. Thus, a defendant must first show that counsel's performance "fell below an objective standard of reasonableness," *id.* at 688, and second, that the errors "actually had an adverse effect on the defense." *Id.* at 693.

■ In reviewing a denial of relief under Rule 37, we must indulge in a strong presumption that counsel's conduct falls within the range of reasonable professional assistance. *Noel v. State,*

342 Ark. 35, 38, 26 S.W.3d 123, 125 (2000). To rebut this presumption, appellant must show that there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt respecting guilt in that the decision reached would have been different absent the errors. *Id.* A reasonable probability is one that is sufficient to undermine confidence in the outcome of the trial. *Id.*

Ineffective assistance of counsel cannot be established by a mere showing of error by counsel or by revealing that counsel's failure to object prevented an issue from being addressed on appeal. *Thomas v. State*, 330 Ark. 442, 448, 954 S.W.2d 255, 258 (1997) (citing *Huls v. State*, 301 Ark. 572, 785 S.W.2d 467 (1990)). We must consider the totality of the evidence before the factfinder, and we will not reverse the denial of postconviction relief unless the lower court's findings are clearly against the preponderance of the evidence. *Noel, supra.*

In denying relief as to counsel's failure to move for directed verdict on appellant's behalf, the trial court found that counsel moved for directed verdict on behalf of Burris because he felt that the evidence supported the motion and that the evidence would not have supported a directed verdict on behalf of appellant. Counsel's determination is supported by the following facts noted by the court of appeals:

> On June 25, 1999, Tom Alexander (a confidential informant) met with investigators of the Fifth Judicial District Drug Task Force (DTF) to arrange a controlled purchase of methamphetamine from appellant, Carl "Bubba" Cook. On July 12, 1999, Alexander arranged to purchase one ounce of methamphetamine from Cook. Investigators with the DTF met with Alexander prior to the arranged purchase and installed a body wire, provided him with a tape recorder, and gave him $1,200 in "buy" money. At approximately 10:30 p.m. on July 12, Alexander entered the residence of Carl Cook and Sandra Burris on Atkins Bottom Road in Pope County, Arkansas. In an area outside of the appellants' home, Alexander gave Cook the $1,200 in exchange for one ounce of methamphetamine. The transaction was recorded on audio tape. Appellant Burris was inside the home during the "buy." She was monitoring a police scanner and communicated to Cook that she could hear Cook's conversation with Alexander on the scanner. Cook demanded that Alexander follow him to the house for questioning. While walking to the residence, Alexander discarded

the body wire and tape recorder before being questioned by Cook. Once inside the residence, Cook ordered a strip search. When Alexander's shirt was removed, a piece of tape was discovered. Before Cook released him, Alexander was robbed, threatened, and kept against his will for approximately two hours.

The following day, a search warrant was executed for the Cook residence for the body wire, recorder, and money. The tape recorder was recovered during the search. The following day, a van was stopped that had been seen at the Cook residence during prior surveillance of his property. The driver, David Kidd, was detained on an unrelated chancery court matter. During a routine inventory search of the van, the body wire that Alexander discarded on Cook's property was discovered.

*Cook*, 76 Ark. App. at 450, 68 S.W.3d at 310–11. In addition, the jury heard a recording of the drug "buy" between appellant and Alexander. *Id.* at 452, 68 S.W.3d at 312. The jury also heard Alexander's testimony regarding the events that followed appellant's discovery of the recording device.

 Given the amount of evidence against appellant, he has failed to show that had counsel moved for directed verdict on his behalf, that it would have been granted. Without a showing of prejudice, appellant is not entitled to postconviction relief.

Appellant also argues that counsel was ineffective for failing to investigate the granting of a pardon. In denying relief on this claim, the trial court held that this matter was addressed on direct appeal and that no prejudice was found.

 On direct appeal, appellant argued that he was entitled to a new trial because a pardoned sentence was introduced during the sentencing phase of his trial. The following is an excerpt from the opinion denying relief:

When the State offered a certified copy of a 1981 conviction for carrying a prohibited weapon, Cook's attorney informed the court that his client maintained that the conviction had been pardoned. The prosecutor noted that the NCIC printout indicated a pardon for a 1979 conviction but not for the 1981 conviction. The judge asked if the appellant could produce any evidence of the pardon, and counsel noted that the circuit clerk's office was closed because it was 9:00 p.m. Counsel never requested a continuance to procure the clerk's record of the alleged pardon.

The court asked several times if appellant wanted to offer any testimony, and counsel stated that he would offer appellant's testimony on the issue of the pardon for the record, but that he did not want to put it before the jury. However, the sentencing continued and the record does not reflect that the appellant ever testified regarding the pardon. The only indication that the appellant was pardoned was the claim of his attorney, and it is well settled that arguments of counsel are not evidence. Once the State offered the certified copy of the conviction, it had established a prima facie case, and the burden shifted to the appellant to establish the pardon. Because no evidence was introduced, the conviction was properly admitted. No motion for new trial or for resentencing was ever filed. Cook attempted to raise the issue of the pardon to the trial court when the case was initially remanded to settle the record on an unrelated issue, but the trial court correctly refused to reconsider the pardon at that time.

The State also argues that the admission of the pardoned offense did not prejudice Cook because he was sentenced to less than the potential maximum sentence, and because he was not charged as an habitual offender. The admission of the prior offense did not change the range of available sentences, nor did Cook receive the maximum sentence available to the jury.

In order to prevail on his claim, Cook must do more than allege prejudice, he must demonstrate it. We will not reverse on the mere potential for prejudice. Therefore, because Cook cannot show that he was prejudiced by the admission of the conviction during the sentencing phase of the trial, his claim of error must fail.

*Cook,* 76 Ark. App. at 454-55, 68 S.W.3d at 313-14 (internal citations omitted). Accordingly, without a showing of prejudice, appellant cannot succeed on a claim of ineffectiveness. We therefore affirm the denial of relief on this point.

Appellant claims that counsel was ineffective for failing to impeach Alexander regarding alleged inconsistent statements by using the tape recorded conversations. In denying relief, the trial court found that appellant failed to indicate what evidence was on these recorded tapes that could have been used to impeach. According to the court, Alexander was cross-examined by counsel and also called as a defense witness. Moreover, the trial court noted that counsel testified at the hearing that he "knew Mr. Alexander had told a lot of lies and that he did not have a deal with the State."

We have held that the manner of questioning a witness is a very subjective issue about which different attorneys could have many different approaches. *Nelson v. State*, 344 Ark. 407, 414, 39 S.W.3d 791, 796 (2001). Even if counsel's decision proves unwise, matters of trial tactics and strategy are not grounds for postconviction relief. *Id.* Moreover, it is the sole province of the jury to determine not merely the credibility of a witness, but the weight and value of his or her testimony. *Id.* In the instant case, there is no evidence that the jury would have resolved the credibility determination in appellant's favor such that it would have affected the outcome of his trial. We therefore affirm the denial of relief.

Appellant's next point, which he brings pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), is that the trial court erred in failing to find that appellant was denied due process because the State failed to disclose evidence of the pardoned conviction previously addressed. In denying relief, the trial court held that this matter was not subject to postconviction relief. We agree.

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. In *Strickler v. Greene*, 527 U.S. 263, 280 (1999), the Court revisited *Brady* and declared that evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." In *Strickler*, the Court also set out the three elements of a true *Brady* violation: (1) that the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) that the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) that prejudice must have ensued.

We have held that Rule 37 does not provide for the discovery of evidence. *Weaver v. State*, 339 Ark. 97, 103, 3 S.W.3d 323, 328 (1999). Moreover, as stated above, the court of appeals found that appellant suffered no prejudice as a result of the admission of the conviction. We therefore affirm the ruling below.

Appellant's final claim for relief is that counsel was ineffective for failing to interview four witnesses and thereafter present the testimony of these witnesses. In denying relief, the trial court

found that counsel was aware of the four witnesses whose names were furnished by appellant and who were at appellant's house on the date of the offense. The court noted counsel's testimony that he did not subpoena the witnesses because the State had them subpoenaed. According to the trial court, these witnesses had felony convictions or charges pending. The trial court ruled that appellant failed to show how he was prejudiced by counsel's failure to interview the witnesses or what testimony they could have given that could have changed the outcome of the trial.

According to appellant, Freddie Petty, Dewey Pace, and Bryan Embry were all present at his residence during the time that Alexander was there. Appellant claims that these individuals would have contradicted Alexander's testimony regarding the drug transaction. Moreover, appellant claims that David Kidd could have testified concerning the suppression of evidence seized from appellant's van.

At the Rule 37 hearing, counsel testified that he did not subpoena these witnesses because he was "afraid" of them. According to counsel, the problem with Embry and possibly some of the others, was that they already had convictions that were related to methamphetamine. Counsel testified that it is a "balancing act" determining which witness would be best to call. He also testified that he did interview Petty and that Petty never told him that there was no methamphetamine lab. Counsel testified that none of the witnesses could have told him that a methamphetamine lab did not exist; all they could testify to was that they did not see any equipment that was used in the manufacture of methamphetamine. Counsel testified that he did not believe that any of these individuals were present during the "critical time" on the date in question. Moreover, according to counsel, although three of the witnesses denied that a drug transaction occurred between appellant and Alexander, these witnesses were only stating that they did not see a transaction.

 The decision of whether or not to call a witness is a matter of trial strategy that is outside the purview of Rule 37. We have held:

> Trial counsel must use his or her best judgment to determine which witnesses will be beneficial to his client. When assessing an attorney's decision not to call a particular witness, it must be taken into account that the decision is largely a matter of professional judgment that experienced advocates could endlessly debate, and the fact that

there was a witness or witnesses who could have offered testimony beneficial to the defense is not in itself proof of counsel's ineffectiveness. Nonetheless, such strategic decisions must still be supported by reasonable professional judgment pursuant to the standards set forth in *Strickland*.

*State v. Goff*, 349 Ark. 532, 541, 79 S.W.3d 320, 325-26 (2002) (internal citations omitted). Because counsel's decision was a matter of trial strategy that did not fall beyond the scope of what a competent attorney would recommend, we affirm the ruling below.

Affirmed.