Cecil KNAPPENBERGER *v.* STATE of Arkansas

CR 84-27                                    672 S.W.2d 54

Supreme Court of Arkansas
Opinion delivered July 16, 1984
[Rehearing denied September 10, 1984.*]

*PURTLE, J., would grant.

*Howard & Howard,* by: *William B. Howard,* for appellant.

*Steve Clark,* Att'y Gen., by: *Theodore Holder,* Asst. Att'y Gen., for appellee.

PER CURIAM. Appellant Cecil Knappenberger was charged with second degree murder in the death of Wiley Johnson. He was found guilty of manslaughter and sentenced to ten years imprisonment. We affirmed. *Knappenberger* v. *State,* 278 Ark. 382, 647 S.W.2d 417 (1983) (amended on denial of rehearing March 28, 1983). We subsequently granted permission to proceed in circuit court pursuant to A.R.Cr.P. Rule 37 on allegations of ineffective assistance of counsel. After a hearing, the trial court found that petitioner had not been denied effective assistance of counsel. This appeal is from that finding.

On appeal from the denial of a petition for postconviction relief we reverse only if the findings of the court are clearly against the preponderance of the evidence. *Irons* v. *State,* 267 Ark. 469, 591 S.W.2d 650 (1980). The only issues in this appeal are whether counsel's assistance was ineffective by virtue of his advising appellant to confess to the crime and in failing to object to the autopsy report and the testimony of witnesses Sherrod and Bristow. We conclude that counsel was not incompetent and affirm.

Appellant said in a pretrial statement and at trial that the victim Wiley Johnson angrily approached his truck on a lonely road and jerked open the door, saying he was going to

kill him. Appellant said that to protect himself, he shot Johnson once in the leg. The blast from appellant's shotgun struck an artery causing Johnson to back off and appellant fled in his truck leaving Johnson on the road. According to a state trooper who gave first aid to the victim, Johnson declared he was dying and said appellant had shot him. Johnson bled to death before help could arrive.

Appellant's trial counsel testified that after talking to petitioner he believed his best defense to be justification. When counsel formed his theory of the defense, he was aware that there had been a dying declaration and that petitioner had told his sister that he shot Johnson. Evidence was also available to show that petitioner was having an affair with a married woman with whom Johnson may also have been romantically involved. On the day petitioner shot Johnson, petitioner told the woman's husband Richard Sherrod that both he (the appellant) and Johnson had been seeing Sherrod's wife. Later in the day, Johnson told appellant that a person could get killed telling things like that. Soon thereafter, Johnson stopped petitioner and was shot by him. Another potential witness said that petitioner had told her that he was afraid of losing Mrs. Sherrod, whom he planned to marry, to Johnson. Richard Sherrod had heard petitioner refer to Johnson as a "son of a bitch" who was the cause of the problems between Sherrod and petitioner. The fact that there was substantial evidence of petitioner's guilt even if he gave no statement is significant in assessing counsel's advice because what counsel knew at the time he advised petitioner is pertinent, not what evidence the State eventually decided to present at trial. Clearly, the State did not offer the evidence that was available only because the issue had become whether appellant acted in self-defense.

Counsel at first advised petitioner to remain silent. He advised him to give a statement only after weighing the evidence against him and considering the likelihood that self-defense could succeed as a defense in view of the facts of the case. (It may even be said that the strategy was a success in light of the jury's finding him guilty of manslaughter rather than second degree murder.) Once counsel decided in his professional judgment that justification was a plausible

defense, he adopted a trial strategy which included petitioner's making a statement and testifying at trial in line with the contents of the statement to point out to the jury that he had consistently been forthright and honest. There is no doubt that other attorneys could advance other strategies which might not include giving a statement and claiming justification, but this in itself does not make counsel ineffective. *See Scantling* v. *State,* 271 Ark. 678, 609 S.W.2d 925 (1981). Matters of trial tactics and strategy which can be a matter of endless debate by experienced advocates are not grounds for postconviction relief. *Leasure* v. *State,* 254 Ark. 961, 497 S.W.2d 1 (1973). Petitioner himself made the point that counsel's decision was a matter of debatable trial tactics by calling as witnesses at the postconviction hearing several experienced attorneys who said they would have handled the defense differently. The State countered with attorneys who testified that counsel had employed sound trial strategy.

With regard to counsel's failure to object to the autopsy report and to the testimony of witnesses Sherrod and Bristow, counsel's testimony at the Rule 37 hearing indicates that the decision not to object was also a tactical one, based on the premise that petitioner had nothing to hide from the jury. Also, petitioner has failed to demonstrate that there was any sound basis for an objection or that he was unduly prejudiced by the failure to object. A showing of prejudice is required before postconviction relief is appropriate. *Strickland* v. *Washington,* ___ U.S. ___, 104 S.Ct. 2052 (1984).

The United States Supreme Court recently provided guidelines for assessing attorney performance in the area of investigation of a defense. These guidelines are applicable to petitioner's case.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. *Strickland* v. *Washington.*

At most petitioner has established that not all attorneys would have pursued the defense of justification or allowed him to give a pretrial statement. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland* v. *Washington.* We cannot say here that counsel's tactical decisions denied him a fair trial.

Petition denied.

PURTLE and HOLLINGSWORTH, JJ., dissent.

JOHN I. PURTLE, Justice, dissenting. I agree that *Strickland* v. *Washington,* ___ U.S. ___, 104 S.Ct. 2052 (1984) correctly sets forth the standard required in determining whether a defense attorney was ineffective. The correct standard of performance to be applied is that of "reasonably effective assistance." *Strickland, supra.* All federal courts appear to have adopted this standard. The criteria to be used in judging the standard is where the trouble arises. I agree with *Strickland* that a defendant-petitioner must first show that counsel was deficient and additionally must prove prejudice. This court has many times held that a petitioner must not only show ineffective assistance of counsel but must also show he was prejudiced thereby. *Blackmon* v. *State,* 274 Ark. 202, 623 S.W.2d 184 (1981). I find no conflict between our holding and that of *Strickland* and the federal courts. Therefore, for the purposes of this dissent *Strickland* is the standard.

We all agree that both the State and Federal Constitutions give an accused the right to competent counsel and a speedy and fair trial before an impartial jury. The fact that a person with a license sits at the side of the accused is not sufficient to meet the constitutional standards of assistance of counsel. The purpose of counsel is to provide and protect the fundamental rights of assistance of counsel and fair trial which are guaranteed to everyone accused of a crime. When counsel, whether appointed or retained, fails to measure up to the reasonably effective standard the result is that the accused did not receive a fair trial.

I realize that hindsight is always more accurate than foresight. To second guess the strategy of defense counsel is a dangerous thing. Even the trial attorney would likely change some tactics if he were permitted to retry a case. Likely the two best criminal defense lawyers in the country would not try the same case in the exact same manner. Therefore, I will limit my dissent to the single issue of the trial counsel allowing appellant to make a confession. The record of the trial on the appeal of this case did not reveal there was a dying declaration or that counsel had any idea one was made. Hindsight on the part of the State also affords an opportunity to straighten out some of the rough spots. If such a statement was made the only possible reason for the State not having introduced it at the trial is that appellant's confession and testimony make the declaration unnecessary. As I understand the facts appellant obtained the services of the attorney before he talked to the officers. His confession provided the motive and details of the offense. It furnished leads and within itself likely made a prima facie case. Without the confession the record of trial reveals the State at most had substantial evidence. The confession brought in the adulterous affair which no doubt was considered by the jury in determining appellant's guilt.

Another reason I think the confession idea was not reasonably effective assistance is that there was no indication there would be any consideration whatsoever in return for the confession. The fact that there was no plea bargaining or anything of that nature indicates appellant gave up his Fifth Amendment right to remain silent without receiving even a

pat on the head in exchange.

The present case resembles *Strickland* only in subject matter. In *Strickland,* the accused surrendered to the police and voluntarily gave a lengthy statement and confession. His attorney was further surprised to learn that his client had confessed to two other murders after the attorney had advised him not to talk. Again acting against his attorney's advice he waived trial by jury and pleaded guilty to all three murders. Furthermore, he waived a jury on the sentencing phase in spite of the fact that his attorney recommended a jury. In the case before us it was the attorney who advised appellant to confess. The per curiam in this case dwells on facts which were not in the trial record. There was no mention in the trial record of a dying declaration. Neither was there anything about trial strategy included in the record. The very least that could be said is that the confession did not help the appellant. He received the maximum sentence allowed for manslaughter. The record of the trial leaves me with the impression that had counsel not advised appellant to confess the State would probably not have been able to prove a case. The appellant relied on the advice of his lawyer. Strickland went against the advice of his lawyer. It is my opinion that a lawyer who advises his client to confess is rendering less than reasonably effective assistance unless there is a corresponding concession by the State or there are other special circumstances. There is no doubt but that appellant's lawyer is of the highest character and ability but even the best lawyer in the world sometimes makes a mistake.

HOLLINGSWORTH, J., joins in this dissent.