Richard Lee MITCHAEL *v.* STATE of Arkansas

CR 91-150                                        828 S.W.2d 351

Supreme Court of Arkansas
Opinion delivered April 13, 1992

*Roger T. Jeremiah*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Didi H. Sallings*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellant, Richard Lee Mitchael, was convicted of raping his seven year old stepdaughter and sentenced to thirty-five years imprisonment. He contends the Trial Court erred by (1) refusing to grant a mistrial when a witness referred to a warrant that had been issued for his arrest on a prior offense, (2) admitting his work records as evidence under the business records exception to the hearsay rule absent testimony from the custodian or other qualified witness, and (3) refusing to grant his motion for new trial based on ineffective assistance of counsel. We hold (1) the reference to the prior warrant was not sufficient to cause a mistrial, (2) a qualified witness testified with respect to the business records, and (3) Mitchael has not demonstrated ineffective assistance of counsel. We affirm the conviction.

Testimony showed that on June 27, 1990, the victim and her family went swimming at the Alma Swimming Pool. The group included the victim's mother, her brother, and Mitchael. Everyone returned to the house late that afternoon, and the mother left for work about 3:15 p.m. The brother left the house shortly thereafter. Mitchael was left babysitting the victim because it

was his day off from work.

The victim testified she was sitting in the living room watching cartoons when Mitchael pulled her into his bedroom and onto the bed where he raped her. She described the incident in detail. Mitchael told her he would buy some diapers for her doll if she would not tell anyone. He later purchased and gave her the diapers.

At first, the victim did not tell her mother what had happened because she was afraid. The day after the rape occurred, she left to visit an aunt. Upon returning a week later, the victim revealed what had happened, and her mother took her to a doctor who examined her and found evidence of penetration.

Mitchael claimed the rape did not occur and that the victim was lying. He presented the testimony of his father, mother, and that of a son from a previous marriage. They testified Mitchael was at work on the 27th until 4:30 p.m. when he came by his parent's house to pick up his son, Robert. Mitchael then took Robert to Mitchael's house to spend the night. Robert testified he spent the evening at his father's house playing Nintendo. He further stated the victim acted normally and watched television in the living room. Robert saw nothing unusual happen that night. The victim and her mother testified Robert was not at their house on the 27th.

Mitchael's mother and father also stated the victim had lied on several prior occasions. They admitted, however, that the lies always related to disputes between children.

Mitchael also attempted to prove that the victim had some knowledge about sexual activities before the 27th. This evidence was apparently presented to explain how a seven-year-old could testify in such graphic detail about sexual activities. Mitchael stated that a week before the incident allegedly occurred the victim walked into the living room while he was watching a pornographic movie. The movie allegedly depicted activities similar to the activities the victim said occurred between herself and Mitchael. The victim said she remembered walking into the living room while Mitchael was watching the movie; however, she was very confused about what exactly she saw.

Mitchael also testified he went to work at SSI Incorporated

on the 27th and then to his parent's house to pick up Robert, and Robert spent the night at Mitchael's house. Mitchael said he was not in the house alone with the victim and had not touched her. He also stated he was impotent on the 27th. The mother contradicted that contention. Dr. Ross, who examined Mitchael for a prostate infection on July 12th, stated impotence could be a symptom of a prostate infection. The doctor did not know, however, whether Mitchael was suffering from the infection on the 27th.

In rebuttal, the State introduced Mitchael's time card at SSI Incorporated through the testimony of Martine Anhalt. The time card showed that Mitchael was not at work on the 27th. This was contrary to Mitchael's testimony, and that of his mother, father, and son.

The jury returned a guilty verdict. Judgment was entered on the verdict, and Mitchael moved for a new trial on the basis of ineffective assistance of counsel. The motion was denied.

### 1. Mistrial

The victim's mother testified about filing the complaint against Mitchael with law enforcement authorities. The following colloquy occurred:

Q: You made a complaint?

A: Yeah, I filed a report.

Q: Once you filed a complaint, what took place then?

A: Well, they found that he had a warrant for his arrest.

Defense counsel immediately moved for a mistrial on the ground that the arrest warrant referred to a prior crime alleged against Mitchael. The Trial Court refused to grant the mistrial because the jury probably believed the warrant had been issued on the current rape charge. The mother had previously stated she had called the authorities on the current charge.

A mistrial is an extreme and drastic remedy to be resorted to only when there has been an error so prejudicial that justice cannot be served by continuing the trial. *Russell* v. *State*, 306 Ark. 436, 815 S.W.2d 929 (1991). The granting or denial of a motion for mistrial lies within the sound discretion of the trial judge, and the exercise of that discretion should not be disturbed

on appeal unless an abuse of discretion or manifest prejudice to the complaining party is shown. *King* v. *State*, 298 Ark. 476, 769 S.W.2d 407 (1989).

■ Mitchael has not demonstrated the prejudice necessary for granting a mistrial. The Trial Court concluded, and we cannot disagree, that the jury could have believed the arrest warrant referred to the current rape charge.

■ Even if we assume jury members thought they were hearing evidence of a prior crime, that alone is insufficient for granting a mistrial in these circumstances. We have consistently affirmed refusal to grant a mistrial when a prior crime was mentioned in an inadvertent remark, absent a showing of significant unfair prejudice. *See, e.g., Novak* v. *State*, 287 Ark. 1, 698 S.W.2d 499 (1985); *McFarland* v. *State*, 284 Ark. 533, 684 S.W.2d 233 (1985); *Sanders* v. *State*, 277 Ark. 159, 639 S.W.2d 733 (1982). Here, the nature of the prior crime was not even disclosed, and there is at least doubt about the jury's perception of the remark. We find no abuse of discretion in the refusal to grant a mistrial.

### 2. Rule 803(6)

The second point argued is that the Trial Court erred by admitting Mitchael's work records because they constituted hearsay not within a recognized exception. More specifically, he argues the time card introduced as evidence did not fall within the business records exception to the hearsay rule because there was no "qualified witness" to show the time card was kept in the regular course of SSI Incorporated's business.

Arkansas Rules of Evidence 803(6) provides an exception to the hearsay rule for:

> A . . . record . . . in any form . . . of . . . events . . . made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity . . . shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. . . .

The sponsoring witness, Martine Anhalt, had been employed by SSI, a company owned by his brother, for twenty-one years. He testified he had brought with him the original time card for the week ending June 30 pertaining to Mitchael. Anhalt testified the document was a payroll record kept by company supervisors in the normal course of the company's business. He did not personally maintain the time cards but had access to them. Based on this evidence, the Trial Court ruled that Anhalt was a "qualified witness."

The Arkansas Court of Appeals has, on two occasions, dealt with the definition of "qualified witness" as the term is used in Rule 803(6). In *Cates* v. *State*, 267 Ark. 726, 589 S.W.2d 598 (Ark. App. 1979), a former loan officer of a bank was found qualified to sponsor a customer account record. The Court of Appeals stated the officer's familiarity with the account, in addition to his prior employment at the bank, qualified him as a witness within the meaning of Rule 803(6). A trial judge has wide discretion in determining the qualification of witnesses and the admissibility of evidence.

Again in *Wildwood Contractors* v. *Thompson-Holloway Real Estate Agency*, 17 Ark. App. 169, 705 S.W.2d 897 (1986), it was held that a witness sponsoring business records need not have knowledge of the actual creation of the document. The personal knowledge of the sponsoring witness regarding preparation of the business record goes to the weight rather than the admissibility of the evidence. *See also McCormick on Evidence*, § 292 (4th ed. 1991) (stating anyone with the necessary knowledge is qualified; there is no requirement that a sponsoring witness have firsthand knowledge of the matter reported or actually have prepared the report or observed its preparation).

The length of Anhalt's prior employment at SSI, coupled with his knowledge of how the work records were maintained, qualified him as a witness under Rule 803(6). We find no abuse of discretion in the Trial Court's decision.

### 3. New trial

The last argument is that the Trial Court erred by refusing to grant a new trial because defense counsel was ineffective. Although the theory presented at trial was that no rape occurred,

Mitchael argues his counsel was ineffective for failing to investigate the victim's biological father, brother, and other male relatives for having raped the victim. He also argues his counsel was ineffective for not showing the pornographic movie to the jury and by not investigating his work records prior to trial.

To prevail on a claim of ineffective assistance of counsel, it must be shown first that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, it must be shown that the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, and there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt respecting guilt. *Vick* v. *State*, 301 Ark. 296, 783 S.W.2d 365 (1990), citing *Strickland* v. *Washington*, 466 U.S. 668 (1984).

The burden is on Mitchael to prove his allegations, and we do not reverse a trial court's findings unless they are clearly against the preponderance of the evidence. *Cranford* v. *State*, 303 Ark. 393, 797 S.W.2d 442 (1990). The burden is a heavy one because counsel is presumed effective. *Mays* v. *State*, 303 Ark. 505, 798 S.W.2d 75 (1990).

We cannot say defense counsel was ineffective for allegedly failing to investigate other men for having raped the victim. Mitchael recognizes in his brief to this Court that the theory presented at trial was that no rape whatever occurred. Mitchael now claims that theory was incorrect.

Matters of trial tactics and strategy are not grounds for post-conviction relief. *Knappenberger* v. *State*, 283 Ark. 210, 672 S.W.2d 54 (1984). A claim of ineffective assistance of counsel cannot be based upon improvident strategy. *Coston* v. *State*, 284 Ark. 144, 680 S.W.2d 107 (1984).

Nor was defense counsel ineffective for refusing to show the pornographic movie to the jury. Counsel did not believe it would be helpful, and this decision was also one of trial tactics and strategy.

Mitchael also argues defense counsel should have

investigated his work records, suggesting counsel should not have relied on Mitchael's word and that of his relatives. By investigating, counsel would have discovered Mitchael was not at work on the 27th. Four witnesses, including Mitchael, told counsel they believed Mitchael was at work on the 27th. The failure to corroborate this story beyond the witnesses consulted was not "an error so serious that counsel was not functioning as the counsel guaranteed by the sixth amendment." *Vicks* v. *State, supra.*

Affirmed.