Cite as 2019 Ark. 290

# SUPREME COURT OF ARKANSAS

No. CR-19-169

| | | |
|---|---|---|
| | | **Opinion Delivered:** October 24, 2019 |
| LAVAR T. THOMPSON | APPELLANT | APPEAL FROM THE DREW COUNTY CIRCUIT COURT [NO. 22CR-16-18] |
| V. | | |
| | | HONORABLE SAM POPE, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED. |

**JOHN DAN KEMP, Chief Justice**

Appellant Lavar T. Thompson appeals an order of the Drew County Circuit Court convicting him of two counts of first-degree murder, one count of attempted first-degree murder, and one count of aggravated residential burglary and sentencing him to three terms of life imprisonment and one term of fifty years to run consecutively. For reversal, Thompson argues that the circuit court erred in denying his motion for mistrial. We affirm.

## I. *Facts*

On January 10, 2016, Thompson and two of his friends, Jeremiah Jones and Kareena Gold, spent the early morning hours drinking and gambling at a juke joint in Monticello. According to Gold, Thompson had lost most of his money by gambling with the proprietor, and she and Jones encouraged Thompson to leave. Gold drove the friends to Jones's house. When they arrived, Thompson shot Jones and Gold while inside the car.

Jones died immediately. Gold sustained a gunshot wound to the head but survived. She escaped the vehicle and ran toward a neighbor's house to seek help.

Thompson then drove Gold's car to the home of his former girlfriend, Shalonda Binns. There, he broke a window, entered the residence, and found Binns and her boyfriend, Markeia Jamison, in a bedroom. Thompson shot and killed Binns. Jamison and Thompson "tussled for the gun," and Jamison shot two rounds at Thompson. Jamison fled the residence and called the police. Law enforcement arrived at the scene and found Thompson, wounded, in the home and discovered Binns, deceased, with a gunshot wound to the head. Police also discovered Gold's vehicle near Binns's residence with Jones's body inside.

On February 22, 2016, the State filed a felony information charging Thompson with two counts of capital murder, one count of attempted capital murder, one count of aggravated residential burglary, and one count of felon in possession of a firearm. The case proceeded to trial, and a jury found Thompson guilty of two counts of first-degree murder, one count of attempted first-degree murder, and one count of aggravated residential burglary. The jury sentenced Thompson to three life sentences for the murder convictions and fifty years' imprisonment for the burglary conviction to run consecutively. On November 2, 2018, the circuit court entered a sentencing order reflecting the jury's convictions and sentences. From this order, Thompson timely filed his appeal.

II. *Mistrial*

For his sole point on appeal, Thompson argues that the circuit court erred in denying his motion for mistrial. Specifically, he contends that Gold's testimony was nonresponsive to defense counsel's question, irrelevant to the crimes for which he was tried, and intended to accuse him "of being a bad man or a criminal." Thompson further asserts that Gold's testimony was so prejudicial that no admonition to the jury could have cured it.

At trial, the State called Gold as a witness. During cross-examination by defense counsel, the following colloquy occurred,

| | |
|---|---|
| DEFENSE COUNSEL: | And you—One of the things you told the police was that the two of them [Thompson and Jones] were a lot tighter than the three of y'all together. Right? |
| GOLD: | Uh-huh. |
| DEFENSE COUNSEL: | All right. So—But, nonetheless, you had known, the three of y'all had known each other for at least ten years. Right? |
| GOLD: | Yes, sir. |
| DEFENSE COUNSEL: | All right. And— |
| GOLD: | We was so close that the reason why Lavar [Thompson]was down here cause he had just broke his baby momma's leg. |
| DEFENSE COUNSEL: | Objection, Your Honor. Approach? |
| GOLD: | Your Honor, I was just letting him know— |
| THE COURT: | Just be quiet. |

Defense counsel moved for a mistrial, stating that Gold had accused Thompson of committing a crime and that her answer was nonresponsive to his question. Defense counsel argued that the prejudice against Thompson could not be outweighed by the probative value of Gold's statement. The State responded that Gold's testimony did not necessarily implicate Thompson in any crime and that the court could give a curative instruction. After hearing arguments, the circuit court ruled, "So I'm going to give an admonishment. I'm going to deny the mistrial at this time. We'll proceed." The circuit court subsequently admonished the jury:

| THE COURT: | Ladies and gentlemen of the jury, you will disregard the last response of the witness. It was not responsive to the questions asked. It was a totally adlibbed [sic] and is not relevant to the issues in this case. So follow my instruction. Ms. Gold? |
| --- | --- |
| GOLD: | Yes. |
| THE COURT: | You're not an advocate in this case. You're a witness. Respond to the attorney's questions and leave it at that. Proceed. |
| GOLD: | Yes, sir. |

Mistrial is an extreme and drastic remedy that is appropriate only when there has been error so prejudicial that justice cannot be served by continuing with the trial or when the fundamental fairness of the trial has been manifestly affected. *McClendon v. State*, 2019 Ark. 88, 570 S.W.3d 450. A circuit court has wide discretion in granting or denying a motion for a mistrial, and absent an abuse of that discretion, the circuit court's decision will not be disturbed on appeal. *Id.* In determining whether a circuit court abused its

4

discretion in denying a mistrial motion, we consider factors such as (1) whether the prosecutor deliberately induced a prejudicial response and (2) whether an admonition to the jury could have cured any resulting prejudice. *Id.*

We have observed that there is always some prejudice that results from the mention of a prior bad act in front of the jury. *Hall v. State*, 314 Ark. 402, 862 S.W.2d 268 (1993). In instances where the infraction creates minimal prejudice, the proper remedy is an objection to the evidence and an admonition or instruction to the jury to disregard the remark. *Id.*; *see also Sullinger v. State*, 310 Ark. 690, 840 S.W.2d 797 (1992) (affirming the denial of a mistrial motion when a prosecutor highlighted the defendant's cocaine usage); *Mitchael v. State*, 309 Ark. 151, 828 S.W.2d 351 (1992) (affirming the denial of a mistrial motion when a witness inadvertently referred to an arrest warrant from the defendant's prior offense); *Strawhacker v. State*, 304 Ark. 726, 804 S.W.2d 720 (1991) (affirming the denial of a motion for mistrial when a detective inadvertently testified that the defendant had a prior misdemeanor conviction).

In the case at bar, Gold's testimony did not warrant a mistrial for the following reasons. First, the prosecutor did not deliberately induce a prejudicial response from Gold. To the contrary, defense counsel—not the prosecutor—questioned Gold on cross-examination when the witness spontaneously made the remark that Thompson was in town "cause he had just broke his baby momma's leg." The circuit court characterized Gold's answer as "ad-libbed" and irrelevant. Second, the circuit court gave an admonition to the jury that could have cured any resulting prejudice. In fact, the circuit court's

admonition went beyond simply instructing the jury to disregard Gold's statement. The circuit court also reminded Gold that she was a witness—not an advocate—and that she should have responded solely to counsel's questions.

Thompson cites *Green v. State*, 365 Ark. 478, 231 S.W.3d 638 (2006), for the proposition that the circuit court abused its discretion in admitting Gold's testimony. In *Green*, the circuit court allowed a witness's testimony that her brother and her nephew had stolen Green's marijuana plants and that her nephew had mysteriously died after the theft. We held that the circuit court abused its discretion by admitting the testimony because it was clearly prejudicial in implicating Green in an unrelated murder and disappearance, that no admonition to the jury could have cured the statement, and that the witness's response was irrelevant to the issue of whether Green had committed the murders for which he was on trial. *Id.* at 495, 231 S.W.3d at 652. The *Green* case is distinguishable from the present case because Gold's statement did not implicate Thompson in an unrelated crime, and the record does not support an implication that Thompson had previously been convicted of a crime for breaking "his baby momma's leg." Thus, we hold that the circuit court did not abuse its discretion in denying Thompson's motion for mistrial. Accordingly, we affirm.

III. *Rule 4-3(i)*

Because Thompson received three sentences of life imprisonment, this court, in compliance with Arkansas Supreme Court Rule 4-3(i), has examined the record for all

6

objections, motions, and requests made by either party that were decided adversely to Thompson. No prejudicial error has been found. We therefore affirm.

Affirmed.

BAKER, J., concurs.

HART, J., dissents.

**KAREN R. BAKER, Justice, concurring.** I agree that the circuit court did not abuse its discretion in denying Thompson's motion for mistrial. However, I disagree with the majority's position that "Gold's statement did not implicate Thompson in an unrelated crime." Gold's statement was elicited by defense counsel as follows:

| DEFENSE COUNSEL: | All right. So–But, nonetheless, you had known, the three of y'all had known each other for at least ten years. Right? |
|---|---|
| GOLD: | Yes, sir. |
| DEFENSE COUNSEL: | All right. And– |
| GOLD: | We was so close that the reason why Lavar was down here cause he had just broke his baby momma's leg. |

In my view, Gold's statement regarding Thompson's breaking "his baby momma's leg" does implicate Thompson in a crime. However, the present case is still distinguishable from *Green v. State*, 365 Ark. 478, 231 S.W.3d 638 (2006), because Gold made a singular statement that was elicited in response to a question by defense counsel. Further, in the present case, the circuit court admonished the jury to disregard Gold's statement. We have held that "an admonition will usually remove the effect of a prejudicial statement unless

7

the statement is so patently inflammatory that justice could not be served by continuing the trial. *Kimble v. State*, 331 Ark. 155, 959 S.W.2d 43 (1998)." *Williams v. State*, 2011 Ark. 432, at 8, 385 S.W.3d 157, 162. Considering the record before us and our standard of review, Gold's statement was not of such magnitude that we must find the circuit court abused its discretion in denying the motion for a mistrial. Accordingly, I agree with the majority's decision to affirm.

**JOSEPHINE LINKER HART, Justice, dissenting.** I dissent. An admonition to the jury could not cure the prejudice from witness Gold's non-responsive statement accusing Thompson of assaulting the mother of his own child, and the majority's attempt to distinguish this case from *Green v. State*, 365 Ark. 478, 231 S.W.3d 638 (2006) (circuit court abused its discretion in denying motion for mistrial where statements from witness tended to implicate defendant in unrelated crime) is unavailing.

That an admonition was insufficient to cure the prejudice from Gold's statements is demonstrated by the circuit judge's own observations after the statements were made: "I think from a legal standpoint, if I go forward this case will get reversed." The trial court then went on to state: "I do not like it, you know. I can give an admonishing instruction. I just do not think one, when it is reviewed, will be enough to cure what has happened." However, after further argument from the State, the trial court denied the motion for a mistrial, and even pointed to the fact that it was the defendant who had elected to go to trial in this case. Whether a defendant elects to exercise his constitutional right to a jury

8

trial is not a consideration relevant to whether that trial proceeds in a fair, non-prejudicial manner.

As set forth in *Green*, a mistrial is warranted where a witness accuses the defendant of an unrelated crime. 365 Ark. 478, 231 S.W.3d 63. The majority purports to distinguish this case from *Green*, noting that "the record does not support an implication that Thompson had previously been convicted of a crime for breaking 'his baby momma's leg.'" However, a review of the *Green* opinion shows no indication that the defendant had been convicted of the unrelated accusation there either; the witness only stated that his family member had died under mysterious circumstances after stealing drugs from the defendant. *See Green, supra. Green* controls; the circuit court here should have just declared a mistrial and set another trial date.

I dissent.

*Montgomery, Adams & Wyatt, PLC*, by: *James W. Wyatt*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *David L. Eanes Jr.*, Ass't Att'y Gen., for appellee.