Cite as 2024 Ark. 9

# SUPREME COURT OF ARKANSAS
**No.** CR–22–452

| | | |
|---|---|---|
| RHYS FRANKLIN | | **Opinion Delivered:** February 1, 2024 |
| | APPELLANT | APPEAL FROM THE SCOTT COUNTY CIRCUIT COURT [NO. 64CR-21-75] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE JERRY DON RAMEY, JUDGE |
| | APPELLEE | <u>AFFIRMED; COURT OF APPEALS OPINION VACATED</u>. |

**CODY HILAND, Associate Justice**

Rhys Franklin appeals his convictions in the Scott County Circuit Court of driving while intoxicated (DWI) and refusal to submit to a chemical test, arguing that the circuit court erred by denying his two separate motions for a mistrial. Our court of appeals reversed and remanded, and we granted the State's petition for review. Because we hold that the circuit court did not abuse its discretion, we affirm accordingly and vacate the court of appeals' opinion.

## I. *Factual Background*

On the evening of November 17, 2020, Deputy James Oswald responded to a dispatch call that reported an individual "passed out" in a parked car on the side of the road. Upon his arrival at the scene, Deputy Oswald discovered Franklin asleep in the driver's seat with the car lights on, the passenger-side window rolled down, and the engine running. After Deputy Oswald's initial attempts to wake Franklin were unsuccessful, he reached through the window and turned off the vehicle. After several more attempts, Franklin finally

awakened. Deputy Oswald asked him for his name, to which Franklin twice replied "mom." Not only could Deputy Oswald smell the odor of intoxicants on Franklin's breath, he also observed Franklin's eyes to be red, watery, and bloodshot, and his speech to be slurred. Deputy Oswald asked Franklin if he had been drinking, and Franklin admitted consuming several beers.

After Deputy Oswald instructed Franklin to step out of the vehicle, he noticed Franklin's balance was poor and wobbly—in fact, he was unable to walk without the assistance of Deputy Oswald. When Deputy Oswald asked Franklin if he was willing to submit to a field sobriety test, Franklin refused, stating, "I'm not doing that. I'm just not doing that. Do whatever you have to do, I'm not doing that." At that time, Deputy Oswald informed Franklin that he was under arrest on suspicion of DWI and placed him in the back of his patrol car. Upon a search of Franklin's vehicle, Deputy Oswald found an empty beer can in the passenger-side floorboard, an opened thirty-pack of beer, and more cans of beer in an ice chest. Franklin was transported to the detention center where he refused to submit to any chemical tests to determine his degree of intoxication. Deputy Oswald ultimately issued Franklin citations for both DWI and refusal to submit.

At the jury trial, Deputy Oswald testified on direct examination to the aforementioned observations that led him to believe Franklin was intoxicated. On cross-examination, the defense specifically questioned Deputy Oswald regarding the tests both offered and refused by Franklin after his arrival at the detention center. Deputy Oswald testified that after Franklin refused a breath test, he was offered a urine test, to which he refused. His refusal of the urine test was indicated on the statement of rights form already

2

admitted into evidence. Defense counsel continued, and the following exchange, in pertinent part, took place:

DEFENSE: And based upon that suspicion, you removed him to the police station for a formal test, a scientific or a test that *could be admitted into evidence*. Now, he didn't take a test, right?

OSWALD: Correct.

. . .

DEFENSE: You testified that you took him to the police station -- for *a certified test* because you had a suspicion that he was intoxicated.

OSWALD: Correct

DEFENSE: Now, what happened at the station that changed your suspicion to a firm conviction, enough that you wrote him a citation for DWI? That is a simple question, son.

OSWALD: I mean, it's not admissible, but it was .17 the PBT.

(Emphasis added).

At this point, both counsel for the State and the defense approached the bench where the defense moved for a mistrial. The court denied the motion, stating, "[I]n consideration of the totality of the circumstances looking at the entire line of questioning, I am going to find that it was in response to the questioning of the Defense." Although the court offered to give the jury a curative instruction, defense counsel declined the relief.

The jury trial continued with the State's next witness, Omar Gonzales. After the State inquired about his involvement in assisting Deputy Oswald on the night in question, Gonzales voluntarily stated, "When I arrived, Deputy Oswald advised me of what was going on. He had Mr. Franklin in the back of the truck. And he asked me if I could administer a PBT, which I did." Counsel, again, approached the bench. The prosecutor ensured the

court that both Gonzales and Oswald were instructed "not to get into [the PBT]" and apologized to the court. Defense counsel again moved for a mistrial that was denied on the grounds that Gonzales only mentioned that a PBT was given but made no insinuation as to the results of that test, which "case law is clear that is acceptable." Defense counsel, again, stated he did not want to further emphasize the PBT by giving a cautionary instruction. The trial resumed with no cross-examination of Gonzales. After the State rested, the defense alike rested without any presentation of evidence.

The jury found Franklin guilty of both DWI and refusal to submit to a chemical test. After the court of appeals reversed the convictions, we granted the State's petition for review. When we grant a petition for review, we consider the appeal as though it had originally been filed in this court. *Parsons v. Preferred Family Healthcare, Inc.*, 2023 Ark. 56, 662 S.W.3d 654.

## II. *Standard of Review*

A mistrial is an extreme and drastic remedy that is appropriate only when there has been an error so prejudicial that justice cannot be served by continuing with the trial or when the fundamental fairness of the trial has been manifestly affected. *Thompson v. State*, 2019 Ark. 290, 586 S.W.3d 163. The judge presiding at trial is in a better position than anyone else to evaluate the impact of any alleged errors. *McClinton v. State*, 2015 Ark. 245, 464 S.W.3d 913. Declaring a mistrial is proper only where the error is beyond repair and cannot be corrected by any curative relief. *Id*. Therefore, the circuit court has wide discretion in granting or denying a motion for mistrial, and the decision of the circuit court

4

will not be reversed except for abuse of that discretion or manifest prejudice to the complaining party. *Id.*

Among the factors to be considered in determining whether a circuit court abused its discretion in denying a motion for mistrial are whether the prejudicial response was deliberately induced and whether an admonition to the jury could have cured any resulting prejudice. *McClinton*, *supra*. An admonition to the jury usually cures a prejudicial statement unless it is so patently inflammatory that justice could not be served by continuing the trial. *McClendon v. State*, 2019 Ark. 88, 570 S.W.3d 450.

### III.  *Analysis*

Here, the first motion for a mistrial was based on Deputy Oswald's response to questions posed by the defense, not by the prosecutor. In reviewing the transcript, defense counsel "opened the door" and clearly invited the response that he received. We have repeatedly held under the invited-error rule that one who is responsible for error cannot be heard to complain of that for which he was responsible. *Britton v. State*, 2014 Ark. 192, 433 S.W.3d 856. It would be abundantly unjust to permit counsel for either party to intentionally elicit improper evidence only to vehemently object upon its utterance and demand a new trial because of error. That is precisely what happened here. Defense counsel's line of questioning to Deputy Oswald, as emphasized above, reveals that he was well aware that the *only* test results obtained were via the PBT given at the scene—which results were unquestionably inadmissible as evidence. Although the defense attempted to argue at trial that his questions in no way led to Deputy Oswald's answer, we agree with

the circuit court that Deputy Oswald's testimony was a legitimate response to the door opened by defense counsel via the distinct questions asked on cross-examination.[1]

Next, we turn to the statement of Gonzales. While this statement differs from that of Deputy Oswald in that it was a spontaneous response to a question by the State, not the defense, Gonzales's answer was not a foreseeable response to the prosecution's question and cannot be said to have been deliberately induced by the prosecution. Additionally, and more importantly, the utterance that a PBT was given without mention of the actual results is a harmless error, if an error at all. *See Massengale v. State*, 319 Ark. 743, 746, 894 S.W.2d 594, 595 (1995). Just as in *Massengale*, there was already ample evidence before the jury that supported Franklin's guilt of DWI regardless of the mention of the PBT. Franklin admitted that he had been drinking, smelled like alcohol, exhibited physical indicators of intoxication, and had both open and closed containers of beer in his car. The mention of the PBT was not so prejudicial that justice could not be served by continuing the trial.

Finally, any alleged prejudicial effect of Deputy Oswald's or Gonzales's statements could have been alleviated by an immediate curative instruction—one that the court offered, but the defense refused. Defense argues that this trial decision resulted from his opinion that a limiting instruction would only emphasize the PBT "even more."[2] While the defense was well within his rights to make such a decision, he cannot now claim that it was an abuse of

---

[1]On appeal, defense seems to concede this point: "There may be a valid argument that the defense counsel opened the door on the first motion."

[2]It is important to note that in their testimony, both Deputy Oswald and Gonzales used the word "PBT," but there was no testimony before the jury explaining that the acronym stands for "portable breath test," nor was testimony given explaining the significance of the result.

6

discretion warranting reversal. This court has found no abuse of discretion in denying a mistrial where defense clearly opened the door to the allegedly prejudicial statements or where the possible prejudice could have been cured by the circuit court's admonition to the jury, and defense counsel refused the offer of such a curative instruction. *See Dillon v. State*, 317 Ark. 384, 391, 877 S.W.2d 915, 919 (1994); *see also Ferguson v. State*, 343 Ark. 159, 177, 33 S.W.3d 115, 126 (2000).

Based on the foregoing reasons, the circuit court's denial of a mistrial was not an abuse of discretion as the drastic remedy of a mistrial was not warranted.

Affirmed; court of appeals opinion vacated.

BAKER, J., dissents.

**KAREN R. BAKER, Justice, dissenting.** Because the circuit court abused its discretion in denying Franklin's motion to declare a mistrial during the cross-examination of Deputy Oswald, I dissent.

We have long held that PBT results are not admissible as substantive proof against a defendant to prove a charge of DWI. *See Patrick v. State*, 295 Ark. 473, 474, 750 S.W.2d 391, 391 (1988). Stated differently, as the majority recognizes, Franklin's alleged blood-alcohol content as reported by the roadside breath test was "unquestionably inadmissible as evidence." The majority's conclusion that a mistrial was not warranted, despite the introduction of this unquestionably inadmissible evidence, is flawed for two reasons.

First, the notion that "defense counsel 'opened the door' and clearly invited the response that he received[,]" thus "intentionally elicit[ing] improper evidence[,]" is grounded upon a gross mischaracterization of the record before us. It is true that where a

7

witness's answer was a legitimate response to a question posed by defense counsel, such testimony was invited by the appellant. *See Green v. State*, 2013 Ark. 497, at 30, 430 S.W.3d 729, 749. Such is not the case here. The majority correctly notes that "[o]n cross-examination, the defense *specifically questioned* Deputy Oswald regarding the tests both offered and refused by Franklin *after his arrival at the detention center*." (Emphasis added.) In stark contrast to this finding, the majority inexplicably concludes that "Deputy Oswald's testimony was a legitimate response to the door opened by defense counsel via the distinct questions asked on cross-examination." Those distinct questions were as follows:

[DEFENSE]: And based upon that suspicion, you removed him to the police station for a formal test, a scientific or a test that could be admitted into evidence. Now, he didn't take a test, right?

[OSWALD]: Correct.

[DEFENSE]: What I'm wondering about, how do we go from a suspicion to a firm conviction that caused you to write the ticket, because he didn't take the test? I mean, how do we go from level to level two?

[OSWALD]: Well, when you refuse a field sobriety or the other testing.

[DEFENSE]: He refused the field sobriety test on the scene?

[OSWALD]: Correct.

[DEFENSE]: You testified that you took him to the police station—

[OSWALD]: Correct.

[DEFENSE]: —for a certified test because you had a suspicion that he was intoxicated. Now, what happened *at the station* that changed your suspicion to a firm conviction, enough that you wrote him a citation for DWI? That is a simple question, son.

[OSWALD]: I mean, it's not admissible, but it was .17 the PBT.

8

(Emphasis added.)

This exchange demonstrates that the aim of defense counsel's line of questioning was both to elicit testimony regarding what happened at the detention center to further convince law enforcement of Franklin's guilt and to carefully limit the scope of Deputy Oswald's testimony to only the admissible test results, if any. Further, it is undisputed that the PBT was administered to Franklin at the scene, well before Franklin was transported to the detention center. Therefore, it is clear that Deputy Oswald's testimony was not a legitimate response to defense counsel's line of questioning. The flaw in the majority's position is amplified by the fact that all parties involved understood the results of Franklin's PBT to be inadmissible. In spite of this understanding, as well as the State's pretrial directive to its witnesses "not to get into [the PBT]," Deputy Oswald prefaced the disclosure of those very results by admitting, "I mean, it's not admissible, *but . . . .*" (Emphasis added.) I cannot agree that such a deliberate disclosure of inadmissible evidence constitutes a legitimate response, particularly when it was nonresponsive to defense counsel's line of questioning.

Second, the prejudicial effect of Deputy Oswald's testimony could not have been alleviated by a curative instruction to the jury. Prior to its deliberations, the jury was instructed as follows:

> Rhys Franklin is charged with the offense of Driving While Intoxicated. To sustain this charge the State must prove beyond a reasonable doubt that Rhys Franklin:
> [W]hile intoxicated, operated or was in actual physical control of a motor vehicle; or
> [O]perated or was in actual physical control of a motor vehicle while the alcohol concentration in his breath or blood was one-eighth of one percent (.08%) or more by weight of alcohol in his blood as determined by a chemical test of his blood, urine, or breath.

9

Deputy Oswald imparted upon the jury a clear avenue to Franklin's conviction when he disclosed that Franklin's inadmissible PBT yielded a result of 0.17 percent, which is plainly higher than the legal limit announced to the jury. The prejudicial effect of this testimony is substantial, and it is difficult to conceive of evidence that would be more patently inflammatory under the circumstances. Therefore, admonishing the jury following the erroneous admission of Franklin's PBT results could not have repaired the harm done.

Accordingly, I dissent from the result reached by the majority and would reverse and remand for a new trial.

*Ernie Witt*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.